United States District Court
Southern District of Texas

**ENTERED**

March 22, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-1903 |
| KAYNE ANDERSON CAPITAL ADVISORS, LP and KAYNE ANDERSON FUND ADVISORS, LLC, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

On July 8, 2014, Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited (together, "Plaintiffs" or "EIG") sued Kayne Anderson Capital Advisors, LP and Kayne Anderson Fund Advisors, LLC (together, "Defendants" or "Kayne") in this court for copyright infringement.[1]  Pending before the court is Defendants' Motion for Partial Summary Judgment (the "Motion") (Docket Entry No. 39).  For the reasons stated below, the Motion will be denied.

### I.   Background

EIG publishes "Oil Daily," a daily subscription newsletter.[2] Oil Daily is provided to subscribers either via email or EIG's

---

[1] Complaint for Copyright Infringement ("Complaint"), Docket Entry No. 1.

[2] See Plaintiffs' Second Amended Complaint for Copyright Infringement, Contributory Copyright Infringement, Vicarious Copyright Infringement, and Violation of the Integrity of Copyright Management Information ("Second Amended Complaint"), Docket Entry No. 38, p. 3 ¶¶ 9-13.  Plaintiffs publish numerous other original publications.  Id. at 3-4.

website, which provides password-protected access to current and/or archived issues through a subscription or license agreement.[3] Non-subscribers/licensees can buy individual articles or issues for a set fee per article or issue per user.[4] EIG provides copyright notices and warnings on its website, emails, and publications.[5]

Since at least 2004, Kayne has purchased a single annual <u>Oil Daily</u> subscription for employee Jim Baker.[6] Baker's subscription was routinely forwarded to or shared with other Kayne employees beginning around that time.[7] In 2007 Kayne switched to receiving <u>Oil Daily</u> solely via email rather than including web-access.[8] Kayne maintained Baker's subscription until 2013, when it entered a multi-user license agreement with EIG, paying for five Kayne employees to receive the <u>Oil Daily</u>.[9] EIG alleges that Kayne has

---

[3]<u>Id.</u> at 4 ¶ 17.

[4]<u>Id.</u> at 4-5 ¶¶ 18-19.

[5]<u>Id.</u> at 5-10.

[6]<u>See id.</u> at 11 ¶¶ 30-31. <u>See also</u> Declaration of Thomas Evans Wallin ("Wallin Decl."), Exhibit 3 to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment ("Plaintiffs' Opposition"), Docket Entry No. 50-3, p. 4 ¶ 20; Motion, Docket Entry No. 39, pp. 2-3.

[7]<u>See</u> Second Amended Complaint, Docket Entry No. 38, p. 13 ¶ 39; Motion, Docket Entry No. 39, pp. 2-3.

[8]<u>See</u> Second Amended Complaint, Docket Entry No. 38, p. 13 ¶¶ 43-44.

[9]<u>Id.</u> at 11 ¶ 31. Beginning on March 14, 2013, and continuing through October 22, 2013, Kayne also had a Standard License Agreement for four individuals to receive their own copy. <u>Id.</u> From October 23, 2013, through March 9, 2015, Baker's individual
(continued...)

regularly copied and distributed <u>Oil Daily</u> among unauthorized users, including allowing multiple Kayne employees to access the EIG website using Baker's username and password prior to January 3, 2007, which only he was licensed to use.[10]

EIG alleges that until at least May 21, 2014, Kayne continued to distribute unauthorized copies of <u>Oil Daily</u> to individuals who were not licensed to use them.[11]  EIG filed this action against Kayne for copyright infringement on July 8, 2014.[12]  Kayne filed the Motion now before the court on November 4, 2015.

## II.  <u>Standard of Review</u>

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986).  The moving party is entitled to judgment as a matter of

---

[9](...continued)
subscription was canceled and Baker was added as a fifth recipient under the Standard License Agreement.  <u>Id.</u>; Standard License Agreement Order Form, Exhibit E to Second Amended Complaint, Docket Entry No. 38-7.

[10]<u>See</u> Second Amended Complaint, Docket Entry No. 38, p. 13 ¶¶ 39-40.

[11]<u>See</u> <u>id.</u> at 14-15 ¶¶ 50-51.

[12]Complaint, Docket Entry No. 1.

law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence of specific facts demonstrating there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

"In order to avoid summary judgment, the nonmovant must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact." CQ, Inc. v. TXU Min. Co., L.P., 565 F.3d 268, 273 (5th Cir. 2009). "The party must also articulate the precise manner in which the submitted or identified evidence supports his or her claim." Id. (internal quotation marks and citation omitted). "When evidence exists in the summary judgment record but the nonmovant fails even to refer

<u>to it</u> in the response to the motion for summary judgment, that evidence is not properly before the district court." <u>Id.</u> (same).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

### III.  <u>The Statute of Limitations</u>

Kayne seeks partial summary judgment based on the three-year statute of limitations imposed on copyright infringement actions by 17 U.S.C. § 507(b).  Kayne argues that no genuine issues of material fact exist to save EIG's infringement claims dating more than three years before EIG served the Complaint on July 8, 2014.[13] EIG responds that the discovery rule prevented claim accrual, and fraudulent concealment tolled limitations, until February 5, 2014, when a Kayne employee admitted to EIG that Kayne regularly copied and distributed the <u>Oil Daily</u> to unauthorized users.

In responding to EIG's arguments Kayne relies on communications between Kayne employees and EIG employees in January of 2007.  On January 3, 2007, Diana Lerma, a Kayne employee,

_____

[13] <u>See</u> Motion, Docket Entry No. 39, p. 2.

emailed Deborah Brown, an EIG "Account Services Manager," regarding

Mr. Baker's subscription to the Oil Daily.

> Deborah, Can you advise me on how I go about accessing
> the account online.  I've only been here 2 months; and
> when I came that was already in place.  But now (and
> maybe it's because the subscription expired); the old
> link we have does not allow us to access the account.[14]

Ms. Lerma forwarded a string of internal Kayne emails along with

her email to Ms. Brown.  The most recent email in the chain was

from Mr. Baker to Ms. Lerma:

> I am receiving emails from the Oil Daily.  I haven't
> tried to access our account online.  Can you get an
> update password and login-in from them?  Thanks.[15]

The second most recent in the forwarded chain was from Ms. Lerma to

Mr. Baker:

> Jim: Ron told me he was not able to access your oil daily
> because it expired.  Not sure how he was trying to view
> it; thought he told me from your calendar.[16]

That afternoon, EIG employee Peter Buttrick emailed Ms. Brown

and copied Mark Hoff, another EIG employee:

> I just spoke with Diana Lerma at Kayne.  On web access
> isse [sic] - she will contact you later today with their
> corporate credit card for the remaining $1,554.  On the
> copyright issue - I discussed the severity of the issue
> and advised her to schedule a call with her boss, Jim

---

[14]Jan. 3, 2007, 10:34 a.m., Email from D. Lerma (Kayne) to
D. Brown (EIG), Exhibit 1 to Declaration of Darrian Campbell
("Campbell Decl."), Docket Entry No. 39-1, p. 4.

[15]Jan. 3, 2007, 10:27 a.m., Email from J. Baker (Kayne) to
D. Lerma (Kayne), id.

[16]Jan. 3, 2007, 8:23 a.m., Email from D. Lerma (Kayne) to
J. Baker (Kayne), id.

Baker (no - not the ex-televangelist) and I as soon as possible to discuss options.

I will keep you updated.[17]

Years later, on February 5, 2014, Ana Pope, a Kayne employee, emailed Derrick Dent, an EIG employee, stating:

For some reason we didn't get our oil daily today. Contact is Jim Baker, but would you mind sending it to me? He gets busy during the day.[18]

Ms. Pope emailed Mr. Dent later that day stating that "I just saw the Oil Daily in my inbox from Jim—no need to send! Thanks!"[19]  At some point, Mr. Dent and Ms. Pope spoke, because Ms. Pope sent Mr. Dent the following email that afternoon:

You asked me to outline to you exactly what we do with the Oil Daily, so here it is:  The Oil Daily is sent to one person in the office, Jim Baker.  He usually gets it the night before it is published for and forwards it to me that night.  When I get into the office that next morning the first thing I do, around 7:40am, is email it out to the 20 or so people in the office who have elected to receive the oil daily every morning.  This list includes all of our top execs.[20]

EIG filed suit in July of 2014.

---

[17]See Jan. 3, 2007, Email from P. Buttrick (EIG) to D. Brown (EIG) (cc: M. Hoff (EIG)), Exhibit 3 to Campbell Decl., Docket Entry No. 39-1, p. 12.

[18]See Feb. 5, 2014, 8:54 a.m., Email from A. Pope (Kayne) to D. Dent (EIG), Exhibit F to Second Amended Complaint, Docket Entry No. 38-8, p. 2.

[19]See Feb. 5, 2014, 8:58 a.m., Email from A. Pope (Kayne) to D. Dent (EIG), Exhibit G to Second Amended Complaint, Docket Entry No. 38-9, p. 2.

[20]See Feb. 5, 2014, 1:27 p.m., Email from A. Pope (Kayne) to D. Dent (EIG), Exhibit H to Second Amended Complaint, Docket Entry No. 38-10.  EIG alleges that it told Kayne that copying and sharing violated EIG's copyright after these communications.  See Second Amended Complaint, Docket Entry No. 38, p. 14 ¶ 50.

Kayne argues that the statute of limitations for all infringing acts that occurred more than three years before EIG filed suit has run because EIG knew of Kayne's infringement in January of 2007.  EIG argues that there are fact issues as to when the statute began running on those claims pursuant to the discovery rule and the doctrine of fraudulent concealment.

## A.   The Discovery Rule

A civil action for copyright infringement must be commenced "within three years after the claim accrued."  17 U.S.C. § 507(b). "[E]ach act of infringement gives rise to an independent claim, and the defendant 'is only liable for his acts of infringement committed within three years prior to [p]laintiff's lawsuit.'" Jaso v. The Coca Cola Co., 435 F. App'x 346, 352 (5th Cir. 2011) (quoting Makedwde Publishing Co. v. Johnson, 37 F.3d 180, 182 (5th Cir. 1994));[21] see also Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1969 (2014) ("[T]he separate-accrual rule attends the copyright statute of limitations.  Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation.  Each time an infringing work

---

[21]Makedwde rejected the "continuing tort" theory and joined the courts that held "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief." Makedwde, 37 F.3d at 181-82 (quoting Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir. 1992)).  When the plaintiff became aware of the infringing acts was not at issue in Makedwde, and Makedwde has been cited by subsequent courts applying the discovery rule. See, e.g., Groden v. Allen, 279 F. App'x 290, 294 (5th Cir. 2008). See infra note 24.

is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete claim that accrue[s] at the time the wrong occurs.") (quotations omitted).  Therefore, Kayne argues, each act of sharing the <u>Oil Daily</u> by Kayne that occurred prior to July 8, 2011, is barred by limitations.[22]

Ordinarily, a claim accrues "when a plaintiff has a complete and present cause of action.  In other words, the limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief."  <u>Petrella</u>, 134 S. Ct. at 1969 (citations and quotations omitted).  However, the Fifth Circuit (among others)[23] applies the "discovery rule" in copyright infringement actions.  <u>See</u> <u>Graper v. Mid-Continent Casualty Co.</u>, 756 F.3d 388, 393 (5th Cir. 2014).[24]  Under the discovery rule, a

_____

[22]<u>See</u> Motion, Docket Entry No. 39, pp. 4–5.

[23]<u>See</u> <u>Petrella</u>, 134 S. Ct. at 1969 n.4 ("Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when the 'plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'") (citations and quotations omitted).

[24]Based on language in <u>Petrella</u>, defendants have argued that the Supreme Court "overruled" the discovery rule in copyright infringements.  <u>See, e.g.</u>, <u>Design Basics LLC v. J & V Roberts Investments, Inc.</u>, No. 14-CV-1083-JPS, 2015 WL 5315680, at *12-13 (E.D. Wis. Sept. 11, 2015) ("The defendants claim that <u>Petrella</u> overruled the Seventh Circuit's discovery rule . . . .  Since <u>Petrella</u>, district courts in the Seventh Circuit have continued to apply the discovery rule, and have specifically declined to adopt the defendants' line of reasoning. . . .  This Court agrees . . . and recognizes that it is bound by the controlling case law of the Seventh Circuit.  Until the Seventh Circuits holds otherwise, this

(continued...)

claim accrues once the plaintiff knows or has reason to know of the injury upon which the claim is based.  Id. (citing Jordan v. Sony BMG Music Entertainment Inc., 354 F. App'x 942, 945 (5th Cir. 2009)); see also Groden, 279 F. App'x at 294 ("Under the Copyright Act, a civil action for infringement must be brought within three years of the time the claim 'accrues.'  Thus, Allen's argument that Groden may only recover damages resulting from infringement that occurred within the three years of his filing suit is erroneous, since the relevant inquiry is when the claim accrued, not when the infringement occurred.") (citations omitted).  "[A] cause of action for copyright infringement arises when a party has knowledge of the violation or notice of facts that, in the exercise of due diligence, would have led to such knowledge." Par Microsystems, Inc. v. Pinnacle Development Corp., No. 96-10245, 1996 WL 767478, at *1 (5th Cir. 1996) (citing Jensen v. Snellings, 841 F.2d 600 (5th Cir. 1988)).

---

[24](...continued)
Court concludes that the discovery rule is still the law of this circuit.") (citations omitted); Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc., 28 F. Supp. 3d 399, 411 (E.D. Pa. 2014) ("While the language related to the statute of limitations is suggestive, this Court does not find that Petrella overruled the Third Circuit discovery rule.").

This court is bound by Fifth Circuit precedent and does not conclude that Petrella abrogated circuit law on the discovery rule in this context.  The Fifth Circuit applied the discovery rule in Graper, an opinion issued over a month after Petrella in 2014. Petrella was decided on May 19, 2014.  See also Aspen Technology, Inc. v. M3 Technology, Inc., 569 F. App'x 259, 264 (5th Cir. 2014) ("Specifically, the discovery rule and the doctrine of fraudulent concealment apply to both misappropriation and infringement claims.") (issued May 29, 2014).

Kayne argues that "actual knowledge, as incontestably proven by [Ms. Lerma's January 3, 2007, email to Ms. Brown], means EIG's claim for copyright infringement accrued in 2007 and the statute has been running ever since. There is no genuine issue regarding the fact that Plaintiffs not only had notice, but actual knowledge of the infringement and yet took no action."[25]  EIG responds that it did not have knowledge of Kayne's infringement until February 5, 2014, and therefore earlier claims did not accrue until that date pursuant to the discovery rule.[26]

## B.   Analysis of Discovery Rule Issue

In the January 3, 2007, email chain a forwarded message mentions that someone named Ron was not able to access Baker's account.[27]  The most recent email in the chain was from Mr. Baker, the subscription holder, to Ms. Lerma, his assistant, requesting that she get an updated password for his online account.

This email chain is not sufficient as a matter of law to put EIG on actual or constructive notice that Kayne was improperly sharing the Oil Daily.  EIG provides the Declaration of Thomas Wallin, an EIG employee since 1979, President of EIG from 1999 to

---

[25]See Motion, Docket Entry No. 39, pp. 5-6; see also Reply in Support of Motion for Partial Summary Judgment ("Reply in Support"), Docket Entry No. 56, pp. 2-4.

[26]See Plaintiffs' Opposition, Docket Entry No. 50, pp. 12-19.

[27]See Jan. 3, 2007, Email from D. Lerma (Kayne) to D. Brown (EIG), Exhibit 1 to Campbell Decl., Docket Entry No. 39-1, p. 4.

2011, and current Executive Vice President and Editor-in-Chief.[28] Mr. Wallin states that it is not unusual or infringing activity for an assistant to manage subscriptions for management like Mr. Baker.[29] EIG's policy is to not treat access by an assistant for the purpose of sending Oil Daily to a supervisor-subscriber as infringement because of the daily realities of business operations.[30] Ms. Lerma's email and the one immediately below it indicate that she is acting at Mr. Baker's request on his behalf; it does not show that Kayne was improperly sharing his subscription.

Kayne also relies on deposition testimony by Ms. Brown, the EIG employee who received Ms. Lerma's January 3, 2007, email:

> [Counsel]:    . . . When you received this [email] and noticed that there are two people here that are not on the Kayne Anderson subscription, which was only for Mr. Baker, wouldn't that be evidence that they were forwarding The Oil Daily to people who were not authorized users?
>
> [Ms. Brown]:   It would send up a red flag that more than the authorized user was accessing it, yes.[31]

Later in her deposition Ms. Brown stated:

> [Counsel]:   Do you recall ever having a conversation with Mr. Hoff about this issue?

---

[28]See Wallin Decl., Exhibit 3 to Plaintiffs' Opposition, Docket Entry No. 50-3, p. 1 ¶¶ 3-5.

[29]See id. at 4 ¶¶ 18-19.

[30]See id.

[31]Highly Confidential Videotaped Deposition of Deborah A. Brown, Exhibit 2 to Campbell Decl., Docket Entry No. 39-1, p. 9.

[Ms. Brown]:  I  probably  escalated  the  issue  to
Mr. Hoff, who in turn contacted Mr. Buttrick.

[Counsel]:  So this email then would suggest to you
what  you  stated  earlier,  that  you  saw  a  red  flag,
potential  infringement,  you  escalated  it  to  Mr. Hoff  and
that he took action as a result?

[Ms. Brown]:  Yes, sir.[32]

Although Ms. Brown saw the reference to "Ron" and passed it on to

her supervisors, that email alone does not show that anyone besides

Mr. Baker or his assistant copied or actually viewed the Oil Daily.

    As further evidence, Kayne points to the email Mr. Buttrick

sent later the same day to Ms. Brown and Mr. Hoff.  That email

indicates that Mr. Buttrick spoke with Ms. Lerma at Kayne and "[o]n

the copyright issue — I discussed the severity of the issue and

advised her to schedule a call with her boss, Jim Baker . . . and

I  as  soon  as  possible  to  discuss  options.   I  will  keep  you

updated."[33]  There is no evidence of whether a phone call between

Mr. Buttrick and Mr. Baker occurred.

    Mr. Wallin, Executive Vice President and Editor-in-Chief of

Oil  Daily,  stated  that  EIG  is  vigilant  in  protecting  its

copyright,[34] and customer service staff are instructed to report

---

[32]Id. at 10.

[33]See Jan. 3, 2007, Email from P. Buttrick (EIG) to D. Brown
(EIG) (cc: M. Hoff (EIG)), Exhibit 3 to Campbell Decl., Docket
Entry No. 39-1, p. 12.

[34]See Wallin Decl., Exhibit 3 to Plaintiffs' Opposition, Docket
Entry No. 50-3, p. 3 ¶ 15.  EIG has filed over 40 copyright
(continued...)

even ambiguous circumstances suggesting the possibility that a customer is using an EIG publication in an unauthorized manner.[35] If the circumstances indicate unauthorized copying, the sales director reports to senior management.[36]  If the circumstances are ambiguous, the account representative is directed to contact the customer to confirm the customer's scope of use.[37]  EIG cannot access customer's internal emails or servers.[38]  Therefore, EIG must generally take the customer at their word, as long as there is no further evidence to the contrary that the customer is engaging in infringing activity.[39]

EIG argues that not every "red flag" leads to discovery that infringement is occurring.  EIG followed the process described by Mr. Wallin, and investigated an ambiguous circumstance.  EIG refers to evidence that EIG's investigation did not provide any indication

---

[34](...continued)
infringement lawsuits to date against subscribers who have infringed EIG's copyrights.  Id.

[35]See id. at 2 ¶¶ 6-8.  Mr. Wallin also stated that in 2007 account representatives had incentive to pursue any potential unauthorized copying issues because exposure to liability for copyright infringement provides leverage for EIG sales staff to sell a multi-copy license to the subscriber, leading to higher sales commissions.

[36]Id. at 2 ¶ 9.

[37]See id. at 2 ¶¶ 9-10

[38]See id. at 2 ¶¶ 11-12.

[39]See id.

of improper use by Kayne.    Ms. Lerma emailed Mr. Baker on the afternoon of January 3, 2007, stating:

> One hiccup: they want to know how many users we have. They said that we need to confirm that you'd be the only [sic] accessing the information; otherwise we would be "sharing" and that is against their policy.    Each additional user is $1554 annually.    They have recently found multiple users on one account and then gone back to charge that company for the excess.    So they want to give us a heads up to avoid this happening to us.    What do you propose?    Say 3 users so that you can continue your access and then add myself and Ron?    Or just you and I and just tell the others not to go online to avoid tracking anything back to us via the email addresses.[40]

Mr. Baker replied five minutes later:

> Have them email the document to me on a daily basis.    No web-based access.    Please forward the document to the rest of the group on a daily basis (by accessing my email).    Please create a folder in your email that archives the copies of the document.[41]

In August of 2007 Mr. Baker (through Ms. Lerma) renewed his single subscription for <u>Oil Daily</u> and requested to receive it only via email (no web access).[42]    It is unlikely that EIG would have allowed

---

[40]<u>See</u> Jan. 3, 2007, 1:14 p.m., Email from D. Lerma (Kayne) to J. Baker (Kayne), Exhibit C to Plaintiffs' Opposition, Docket Entry No. 50-7, p. 2. (Exhibits A through Y are "attached" to the Declaration of Fritz Klantschi in Support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, but docketed separately).

[41]<u>See</u> Jan. 3, 2007, 1:19 p.m., Email from J. Baker (Kayne) to D. Lerma (Kayne), <u>id.</u>

[42]<u>See</u> Aug. 30, 2007, Email from D. Brown (EIG) to J. Baker (Kayne); and Email from D. Lerma (Kayne) to D. Brown (EIG), Exhibit E to Plaintiffs' Opposition, Docket Entry No. 50-9.    <u>See also</u> Highly Confidential Videotaped Deposition of Deborah A. Brown, Exhibit D to Plaintiffs' Opposition, Docket Entry No. 50-8, p. 3.

Kayne to renew Baker's single subscription if Ms. Lerma had told
EIG at any point that Kayne copied and shared the subscription.

Kayne argues that even if EIG did not have actual knowledge of
the infringement, the January 3, 2007, email "at a minimum provided
facts that required Plaintiffs to 'diligently make an inquiry to
determine their legal rights,'" which EIG did not do.[43]  Assuming
that the duty to inquire arose, EIG did make an inquiry, according
to its internal policies, with nothing more to go on than an email
referring to "Ron."  See Glasscraft Door I, L.P. v. Seybro Door &
Weathership Co., Civil Action No. H-08-2667, 2009 WL 3460372, at
*11 (S.D. Tex. Oct. 22, 2009).  "Generally, the reasonableness of
plaintiffs' actions, including the reasonableness of inquiring or
failing to inquire, is a fact question for the jury."  Dodson v.
Hillcrest Securities Corp., 92 F.2d 52, Nos. 92-2353, 92-2381, 1996
WL 459770, *8 (5th Cir. 1996) (citing Corwin v. Marney, Orton
Investments, 843 F.2d 194, 198 (5th Cir. 1988) (discussing federal
discovery rule)); Jensen, 841 F.2d at 606-07.  Regardless of
whether Kayne was actively concealing its sharing, a reasonable
fact-finder could find that the January 3, 2007, email string did
not give EIG actual knowledge of Kayne's infringing activities and
that the subsequent investigation was reasonably diligent, but did
not reveal that Kayne, a "long-time customer" in "good standing,"

---

[43]See Reply in Support, Docket Entry No. 56, pp. 2-3.

was making unauthorized use of the Oil Daily.[44]   Royal v. CCC & R
Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013) ("A genuine
dispute of material fact means that 'evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
(quoting Anderson, 106 S. Ct. at 2506)).   The court concludes that
summary judgment evidence gives rise to a genuine issue of material
fact as to whether EIG knew or had reason to know that infringement
was occurring in 2007.   See Graper, 756 F.3d at 393.

## C.   Fraud

EIG also argues that Kayne's fraudulent concealment tolled the
statute of limitations.[45]   A defendant's fraudulent concealment of
the facts underlying a cause of action may toll the statute of
limitations.   The "plaintiff must prove two elements to invoke the
fraudulent concealment doctrine: 'first, that the defendants
concealed the conduct complained of, and second, that [the
plaintiff] failed, despite the exercise of due diligence on his
part, to discover the facts that form the basis of his claim.'"
S.E.C. v. Jackson, 908 F. Supp. 2d 834, 868 (S.D. Tex. 2012)

---

[44]See Wallin Decl., Exhibit 3 to Plaintiffs' Opposition, Docket
Entry No. 50-3, p. 4 ¶ 20.   In contrast, EIG acted quickly after
Ms. Pope confirmed Kayne's sharing practices in February of 2014.
See supra note 20.

[45]See Plaintiffs' Opposition, Docket Entry No. 50, pp. 19-26.
EIG has not moved for summary judgment itself; it raises this
argument to show that there is a fact issue as to when the statute
of limitations for its earlier infringement claims began running.

(quoting <u>Texas v. Allan Construction Co.</u>, 851 F.2d 1526, 1529 (5th
Cir. 1988)); <u>see</u> <u>Prather v. Neva Paperbacks, Inc.</u>, 446 F.2d 338,
340-41 (5th Cir. 1971) (to establish equitable tolling, plaintiff
must show "both successful concealment of the cause of action and
fraudulent means to achieve the concealment").  "[E]ven where a
defendant has concealed wrongful conduct, the statute of
limitations is tolled only until such time as the plaintiff,
exercising reasonable diligence, could have discovered the facts
forming the basis for the claim." <u>Jackson</u>, 908 F. Supp. 2d at 868
(citing <u>Allan Construction</u>, 851 F.2d at 1533) (quotations omitted).
However, although a plaintiff might have inquiry notice of a
potential claim, it does not necessarily follow that reasonable
diligence will discover sufficient facts to support legal action.
<u>Id.</u> at 869 (citing same) (quotations omitted).

**D.  Analysis of Fraud Issue**

There is evidence of fraudulent concealment by defendants in
the January 3, 2007, email exchange between Ms. Lerma and
Mr. Baker.  Ms. Lerma told Mr. Baker that EIG had asked for
confirmation that Mr. Baker was the only user, and informed her
that "sharing" was against EIG's policy.[46]  Mr. Baker instructed her
to maintain the single subscription sent to his email daily, and to

---

[46]<u>See</u> Jan. 3, 2007, 1:14 p.m., Email from D. Lerma (Kayne) to
J. Baker (Kayne), Exhibit C to Plaintiffs' Opposition, Docket Entry
No. 50-7, p. 2.

forward that email to the "rest of the group."[47]  He specifically
told her "no web-based access."[48]  Ms. Lerma had earlier suggested
avoiding web access, since that could provide a method for EIG to
trace the actual number of Kayne users.[49]  A few minutes later, Ms.
Lerma emailed Mr. Buttrick at EIG, stating that:  "I just tried to
leave you a voice mail; but I don't think it worked. Call me when
you have a moment."[50]  Her email was in reply to an email from Mr.
Buttrick that morning, which stated "Please contact me once you
have decided how you would like to proceed."[51]  Later that year,

---

[47]See Jan. 3, 2007, 1:19 p.m., Email from J. Baker (Kayne) to
D. Lerma (Kayne), id.

[48]Id.

[49]See Jan. 3, 2007, 1:14 p.m., Email from D. Lerma (Kayne) to
J. Baker (Kayne), id.

[50]See Jan. 3, 2007, 1:25 p.m., Email from D. Lerma to
P. Buttrick, Exhibit F to Plaintiffs' Opposition, Docket Entry
No. 50-10, p. 2.

[51]See Jan. 3, 2007, 11:41 a.m., Email from P. Buttrick (EIG)
to D. Lerma (Kayne), id.  EIG notes: "Defendants brought this
motion before Plaintiffs had the opportunity to take the
depositions of [] Lerma or [] Baker, . . . [or] Buttrick."
Plaintiffs' Opposition, Docket Entry No. 50, p. 20.  "Plaintiffs'
depositions of [] Lerma and [] Baker were originally scheduled for
September 2 and 3, 2015, but were cancelled at Defendants' request
because Defendants had not yet produced a set of documents that
would concern both witnesses.  As of November 4, 2015, Defendants
informed Plaintiffs that they are still running the necessary
searches, but have not yet provided Plaintiffs with a date certain
as to when such documents will be produced.  Plaintiffs have not
been able to reschedule these depositions until they receive the
relevant document production from Defendants."  Id. at n.8. (citing
Attorney Correspondence, Exhibits G and H, Docket Entry Nos. 50-11
and 50-12).

Kayne renewed its single-user subscription, despite knowing that sharing that subscription was improper.[52]

Subsequent communications suggest that Kayne engaged in an ongoing plan to prevent EIG from discovering that it was sharing the Oil Daily.  There are several examples of Ms. Lerma forwarding the Oil Daily to multiple employees.[53]  On October 25, 2011, Mr. Dent, an EIG account manager, emailed Mr. Baker to inquire whether Baker planned to renew his Oil Daily subscription.[54] Mr. Baker forwarded Mr. Dent's email to two assistants, Ms. Lerma and Ms. Rodgers, and asked them to let Mr. Dent know that Mr. Baker did plan to renew.[55]  Ms. Lerma then emailed Mr. Dent, carbon-copying Ms. Rodgers, stating that "Mr. Baker does intend to renew, pls advise what you'll need from me . . . ."[56]  Mr. Dent replied two days later:

---

[52]See supra note 42.

[53]See Jan. 9, 2007, Email from D. Lerma (Kayne) to R. Logan and J. Meraz (Kayne), Exhibit I to Plaintiffs' Opposition, Docket Entry No. 50-13; Oct. 27, 2011, Email from D. Lerma to 16 email addresses @kaynecapital.com, Exhibit K to Plaintiffs' Opposition, Docket Entry No. 50-15; Nov. 6, 2012, Email from D. Lerma (Kayne) to 16 email addresses @kaynecapital.com, Exhibit M to Plaintiffs' Opposition, Docket Entry No. 50-17.

[54]See Oct. 25, 2011, 9:56 a.m., Email from D. Dent (EIG) to J. Baker (Kayne), Exhibit J to Plaintiffs' Opposition, Docket Entry No. 50-14, pp. 2-3.

[55]See Oct. 25, 2011, 10:23 a.m., Email from J. Baker (Kayne) to D. Lerma (Kayne) and J. Rodgers (Kayne), id. at 2.

[56]See Oct. 25, 2011, 11:28 a.m., Email from D. Lerma (Kayne) to D. Dent (EIG) (cc: J. Rodgers (Kayne)), id.

Thank you for your phone call this morning regarding the
Oil Daily web access for your company. I apologize for
the inconvenience. We are working on the problem now.
You mentioned that you would handle sending the Oil Daily
to your colleagues who need it there. Would it be easier
for us to send the login and password to those
individuals or at least have their names in case, for any
unforeseen reason your access is interrupted in the
future?[57]

Ms. Lerma replied that day:

no less is better. pls just be sure I have the
information. then Jim and I will know how to access when
needed. Jennifer is privy to my contacts so she'll have
access to it when I'm out.[58]

Ms. Rodgers then replied only to Ms. Lerma, stating:

Jim told me to remember that derrick isn't supposed to
know we share the oil daily, its just for jim.[59]

Ms. Lerma responded to Ms. Rodgers:

ok. I didn't tell him that but I guess he assumed it.
I told him that I email it to Jim bc he travels a lot and
it's easier for me to log in to take care of it. And
that you back me up when I'm out. wonder if he's trying
to "trick" us into saying we share it?[60]

Ms. Rodgers replied: "Tricker!"[61]

---

[57]See Oct. 27, 2011, 9:14 a.m., Email from D. Dent (EIG) to
D. Lerma (Kayne), id.

[58]Oct. 27, 2011, Email from D. Lerma (Kayne) to D. Dent (EIG)
(cc: J. Rodgers (Kayne)), id.

[59]Oct. 27, 2011, 9:29 a.m., Email from J. Rodgers (Kayne) to
D. Lerma (Kayne), id.

[60]Oct. 27, 2011, Email from D. Lerma (Kayne) to J. Rodgers
(Kayne), id.

[61]Oct. 27, 2011, 9:50 a.m., Email from J. Rodgers (Kayne) to
D. Lerma (Kayne), id.

That morning, Ms. Lerma had forwarded the <u>Oil Daily</u> to multiple Kayne employees.[62]  This is evidence of Kayne's fraudulent concealment of its infringement, and consistent with Kayne-employee behavior when EIG asked similar questions in 2007.

A year later a similar exchange occurred after Mr. Dent again inquired about renewing Mr. Baker's subscription.[63]   Ms. Lerma replied:

> Jim is traveling this week but he called me just moments ago and wanted me to inquire how much a "group" subscription is.  Not sure we would want to go that route but next year if we bring in more people, what would the cost be and would it have any other perks or still be basically the same with just more user access?  Let me know and when he returns next week then he and I can talk about it.[64]

Mr. Dent sent a "cost breakdown for up-to 10 users," and stated:

> Our site licenses are on a per user basis, with substantial savings off regular subscription rates, depending on the number of users.  The more readers you have, the lower the cost is per user.[65]

Ms. Lerma responded:

> Okay, well, not sure if and when we'd decide for the future, but this is good information.  Does it matter if

---

[62]<u>See</u> Oct. 27, 2011, Email from D. Lerma to 16 email addresses @kaynecapital.com, Exhibit K to Plaintiffs' Opposition, Docket Entry No. 50-15.

[63]Nov. 6, 2012, 11:21 a.m., Email from D. Dent (EIG) to J. Baker (Kayne) (cc: D. Lerma (Kayne)), Exhibit L to Plaintiffs' Opposition, Docket Entry No. 50-16, pp. 3-4.

[64]Nov. 6, 2012, First Email from D. Lerma (Kayne) to D. Dent (EIG), <u>id.</u> at 3.

[65]<u>See</u> Nov. 6, 2012, First Email from D. Dent (Kayne) to D. Lerma (EIG), <u>id.</u> at 2-3.

> we just renew Jim now and then down the line if we have the need that we add or is only at time of renewal that you can add?   And in that scenario would it be prorated?[66]

Mr. Dent answered her questions,[67] and Ms. Lerma's final email in this chain states:

> Yes, let's just renew Jim for now as we don't have the increase or need to have others.  We just wanted the info for budget purposes for 2013 and beyond if the need occurs. . . .[68]

On the same day Ms. Lerma forwarded the <u>Oil Daily</u> to multiple non-licensed Kayne employees.[69]  Because these communications occurred within three years of EIG filing suit, any act of infringement during this period is not barred by limitations even if the statute began running in 2007.   Nevertheless these communications are evidence of Kayne's ongoing, intentional concealment of its practice of sharing the <u>Oil Daily</u> subscription(s).

"Concealment by defendant only by silence is not enough.  He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."  <u>Jackson</u>, 908 F. Supp. 2d at 868 (quoting <u>Crummer Co. v. Du Pont</u>, 255 F.2d 425, 432 (5th Cir.

---

[66]Nov. 6, 2012, Second Email from D. Lerma (Kayne) to D. Dent (EIG), <u>id.</u> at 2.

[67]Nov. 6, 2012, Second Email from D. Dent (EIG) to D. Lerma (Kayne), <u>id.</u>

[68]Nov. 6, 2012, Third Email from D. Lerma (Kayne) to D. Dent (EIG), <u>id.</u>

[69]<u>See</u> Nov. 6, 2012, Email from D. Lerma (Kayne) to 16 email addresses @kaynecapital.com, Exhibit M to Plaintiffs' Opposition, Docket Entry No. 50-17.

1958)).  Kayne was not silent, however; it denied improper use of the Oil Daily subscription more than once.  A denial of wrongdoing can constitute concealment when the parties are in a fiduciary relationship or the circumstances indicate that it was reasonable to rely on defendant's denial.  See Allan Construction, 851 F. 2d at 1532-33.  A fact-finder could find, based on EIG's evidence, that EIG reasonably relied on Kayne's assurances that it was not sharing the Oil Daily subscription and that EIG exercised reasonable diligence.  See Glasscraft Door I, 2009 WL 3460372, at *11.

While Kayne argues that EIG failed to carry its burden of establishing its fraudulent concealment defense, that is not the correct inquiry at this stage.[70]  As the Fifth Circuit described:

> [T]his ruling is dictated by the posture of the question and the nature of the defendants' summary judgment showing.  The plaintiffs bear the ultimate burden of persuasion on the fraudulent concealment issue.  The burden is a heavy one.  Those who have learned of facts 'calculated to excite inquiry' must inquire. . . .  In opposing the motion for summary judgment, however, the plaintiffs were not required to make any showing unless the defendants demonstrated that no genuine issues of fact underlay the due diligence question.  This the defendants failed to do.

In re Beef Industry Antitrust Litigation, MDL Docket No. 248, 600 F.2d 1148, 1171 (5th Cir. 1979); see also Allan Construction, 851 F.2d at 1533 ("We emphasized [in Beef Industry] that while the plaintiffs ultimately would bear the burden of persuasion on the

---

[70]See Reply in Support, Docket Entry No. 56, pp. 4-5.

-24-

question of diligence, in the summary judgment context it was up to defendants 'as the moving parties, to demonstrate conclusively that the plaintiffs, through the exercise of reasonable diligence, would have discovered adequate ground for filing suit.'  To justify summary judgment, we concluded, defendants would have had to prove that the plaintiffs had access to information that would independently verify the allegations . . . .").  The court concludes that fact issues remain as to whether Kayne's alleged fraudulent concealment caused EIG's ignorance of potential infringement claims prior to February 5, 2014, and whether EIG exercised proper diligence.

## IV.   Conclusion and Order

For the reasons discussed above, the court concludes that genuine issues of material fact remain as to when the statute of limitations accrued for EIG's copyright infringement claims arising more than three years before EIG filed this action.  Accordingly, Defendants' Motion for Partial Summary Judgment (Docket Entry No. 39) is **DENIED**.

**SIGNED** at Houston, Texas, on this 22nd day of March, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE