United States District Court
Southern District of Texas
**ENTERED**
January 24, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENERGY INTELLIGENCE GROUP, INC. | § | |
| and ENERGY INTELLIGENCE GROUP | § | |
| (UK) LIMITED, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1903 |
| | § | |
| KAYNE ANDERSON CAPITAL | § | |
| ADVISORS, LP and KA FUND | § | |
| ADVISORS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited (together, "Plaintiffs" or "EIG") have sued Kayne Anderson Capital Advisors, LP and KA Fund Advisors, LLC (together, "Defendants" or "Kayne") for copyright infringement. Pending before the court are Defendants' Motion for Partial Summary Judgment (Docket Entry No. 101), Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defenses ("Plaintiffs' MPSJ") (Docket Entry No. 105), and Plaintiffs' Motion for a Protective Order (Docket Entry No. 129). For the reasons stated below, Defendants' Motion for Partial Summary Judgment will be denied, Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defenses will be granted in part and denied

in part, and Plaintiffs' Motion for a Protective Order will be granted in part and denied in part.

## I.   Background

A detailed history of the parties' business relationship as it relates to the present litigation is provided in a prior opinion.[1] In short, EIG alleges that Kayne copied and distributed Oil Daily, a subscription newsletter published by EIG, in violation of their subscription agreements.  Since at least 2004 Kayne purchased a single annual subscription to Oil Daily for an employee, Jim Baker. That subscription was routinely forwarded to Kayne employees and others who were not subscribers.

In 2007 an EIG employee received a forwarded email chain from Diana Lerma, Baker's assistant, indicating that someone named "Ron" was unable to access Baker's subscription.   Peter Buttrick, an account representative with EIG, then contacted Lerma to discuss purchasing additional subscriptions and alluded to the severity of copyright infringement.  In a subsequent email Lerma advised Baker that Buttrick mentioned charging subscribers retroactively for infringement.   In the last recorded correspondence resulting from that exchange, Buttrick attempted to set up a meeting with Baker. Around that time Baker switched to receiving Oil Daily solely via email rather than via web-access.

---

[1]Memorandum Opinion and Order, Docket Entry No. 68.

In 2013 Kayne entered a multi-user license agreement with EIG, paying for five Kayne employees to receive <u>Oil Daily</u>.  EIG alleges that until at least May 21, 2014, Kayne continued to distribute unauthorized copies of <u>Oil Daily</u>.  EIG filed this action against Kayne for copyright infringement on July 8, 2014.[2]  Kayne filed a motion for partial summary judgment based on the three-year statute of limitations on copyright actions,[3] which the court denied.[4] Kayne renews that motion on the basis of new evidence and also seeks summary judgment on the issue of the number of works allegedly infringed.  EIG seeks summary judgment on a number of Kayne's affirmative defenses and a protective order.  Each of the motions is considered in turn below.

## II.  **Standard of Review**

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986).  The moving party is entitled to judgment as a matter of

---

[2]Complaint for Copyright Infringement ("Complaint"), Docket Entry No. 1.

[3]Defendants' Motion for Partial Summary Judgment, Docket Entry No. 39, p. 2.

[4]Memorandum Opinion and Order, Docket Entry No. 68, p. 25.

law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence of specific facts demonstrating there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

"In order to avoid summary judgment, the nonmovant must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact." CQ, Inc. v. TXU Mining Company, L.P., 565 F.3d 268, 273 (5th Cir. 2009). "The party must also articulate the precise manner in which the submitted or identified evidence supports his or her claim." Id. (internal quotation marks and citation omitted). "When evidence

exists in the summary judgment record but the nonmovant <u>fails even to refer to it</u> in the response to the motion for summary judgment, that evidence is not properly before the district court." <u>Id.</u> (same).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

### III.  <u>Defendants' Motion for Summary Judgment</u>

Kayne moves for summary judgment on the issues of the number of works infringed and limitations.  For the reasons stated below, summary judgment will be denied.

### A.   Number of Works

Kayne argues that an annual subscription to <u>Oil Daily</u> (approximately 250 issues)[5] constitutes a single "work" under the Copyright Act.  The collected issues, Kayne argues, should be considered a compilation.  Under the Copyright Act, "all the parts of a compilation . . . constitute one work."  17 U.S.C

---

[5]Plaintiffs' Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment, Docket Entry No. 120, p. 5.

§ 504(c)(1).  In support of its argument Kayne cites <u>Cullum v.
Diamond A Hunting, Inc.</u>, 484 F. App'x 1000 (5th Cir. 2012) (per
curiam), and <u>Bryant v. Media Right Productions, Inc.</u>, 603 F.3d 135
(2d Cir. 2010).  In <u>Cullum</u> the Fifth Circuit upheld the district
court's summary judgment ruling that a series of photographs
comprised a compilation.  484 F. App'x at 1002.  The plaintiff in
<u>Cullum</u> (1) registered the photographs at issue under a single
copyright registration number, (2) marked the disc that he filed
with the United States Copyright Office as "Set Number 1," and
(3) referred to the photographs in the record on appeal as a
"collection."  <u>Id.</u>  In <u>Bryant</u> the Second Circuit held that "[a]n
album is a collection of preexisting materials -- songs -- that are
selected and arranged by the author in a way that results in an
original work of authorship -- the album."  603 F.3d at 140-41.
The court in <u>Bryant</u> also contrasted the issuance of an album with
the episodic release of a season of a television show, which the
Second Circuit had previously held was not a compilation.  <u>Id.</u> at
141 (citing <u>Twin Peaks Productions, Inc. v. Publications
International, Ltd.</u>, 996 F.2d 1366, 1381 (2d Cir. 1993)).

EIG argues that a daily newspaper purchased by an annual
subscription is not a "compilation."  EIG states that <u>Oil Daily</u>
issues are registered as separate works in batches of approximately
twenty issues under federal regulations permitting group
registration of newsletters.[6]  <u>See</u> 37 C.F.R. § 202.3(b)(9); <u>see</u>

---

[6]<u>Id.</u> at 8.

<u>also</u> 17 U.S.C. § 408(c)(2) (authorizing "regulations specifically permitting a single registration for a group of works by the same individual author"). EIG also states that it never created, published, marketed, sold, or distributed a year-end compilation of preexisting issues, a fact that Kayne does not dispute.[7]

The court is not persuaded by Kayne's arguments. Authorship of a work involves creation, not mere accumulation. The decision to sell works by subscription does not combine several works into one any more than allowing payment in installments divides one work into several. A compilation is, as the court in <u>Bryant</u> held, the product of selecting and arranging preexisting materials to create an original work; it is not the mere byproduct of choosing a sales or distribution model. An issue of <u>Oil Daily</u> is created by selecting and arranging existing articles into a single work that is then distributed to subscribers.[8] The works that comprise an annual subscription, by contrast, are merely a byproduct of the repeated creation of individual issues.

Moreover, unlike the photographer's collection in <u>Cullum</u>, EIG's annual subscriptions are not registered under a single registration number. Nor are they filed on a single disc or similar medium or marked as a distinct set. Nor has EIG referred to an annual subscription as anything analogous to a collection or

_____

[7] <u>Id.</u> at 9-10.

[8] <u>Id.</u> at 10.

-7-

album.  Kayne has not shown that EIG's annual subscriptions are the
product of selection and arrangement resulting in an original work
of authorship.  Kayne is not entitled to summary judgment on this
issue.[9]

## B.    Statute of Limitations

Kayne   seeks   partial   summary   judgment   on   the   issue   of
limitations.  Although the court previously denied summary judgment
on this issue, Kayne moves the court to reconsider on the basis of
new evidence.[10]   Because   the   court   has   already   given   careful
consideration to the evidence presented in Kayne's previous motion
for summary judgment, the court will focus on the newly offered
evidence   to   determine   whether   it   satisfies   Kayne's   burden
independently or sheds new light on existing evidence.  Kayne has

---

[9]The   parties   dispute   whether   the   individual   issues   have
"independent economic value."   Because the court determines that
the issues are distinct works for other reasons, it does not reach
that argument.

[10]EIG objects to the characterization of recent depositions as
"new evidence" because Kayne was aware of the potential witnesses
prior to the previous motion and asks that the court deny the
motion outright.   "[B]ecause the denial of a motion for summary
judgment is an interlocutory order, the court is free to reconsider
and reverse its decision for any reason it deems sufficient, even
in the absence of new evidence or an intervening change in or
clarification of the law."   Smith v. H. E. Butt Grocery Co., 992
F.2d 324 (5th Cir. 1993) (citing Lavespere v. Niagara Mach. & Tool
Works, Inc., 910 F.2d 167, 184-85 (5th Cir. 1990); Bon Air Hotel v.
Time, Inc., 426 F.2d 858, 862 (5th Cir. 1970); Fed. R. Civ. P.
54(b)).   Regardless of the proper characterization of the evidence
now before the court, the court will consider the motion in the
interests of a "just, speedy, and inexpensive determination" of
this action.  Fed. R. Civ. P. 1.

offered no new evidence that EIG had actual knowledge of infringement. Kayne's new evidence addresses the issue of whether EIG had notice of facts which, in the exercise of due diligence, would have led to actual knowledge. See Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir. 1988) (discussing when limitations periods commence under federal law).

Since filing the prior motion for partial summary judgment, Kayne has conducted depositions of several people employed by EIG at the time of the 2007 email from Lerma and subsequent exchange, including Thomas Wallin, Mark Hoff, and Peter Buttrick. Kayne alleges that Wallin's declaration[11] prompted the depositions on which Kayne now relies. Specifically, Kayne refers to the following assertion in Wallin's Declaration:

> In 2007, account representatives had every incentive to pursue the issue where a customer discloses that unauthorized copying of EIG's publications is occurring, as any potential exposure to liability for unauthorized copying creates leverage for EIG's sales staff to sell a multi-copy license to the subscriber, which in turn results in higher commissions for them.[12]

Wallin's statement led Kayne to inquire into whether account representatives, and specifically Buttrick, were in fact incentivized in cases like Kayne's. Kayne argues that the deposition testimony shows that Buttrick lacked incentive and, as a result, failed to diligently investigate.

---

[11]Declaration of Thomas Evans Wallin ("Wallin Declaration"), attached to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment, Docket Entry No. 50-3.

[12]Id. ¶ 16.

Kayne cites the following exchanges from Buttrick's deposition:

Q.   So let's say you caught someone with their hand in the cookie jar –

A.   Uh-hum.

Q.   -- and they were -- let's say they're sharing with five people.

A.   Uh-huh.

Q.   You followed up with them and had the talk –

A.   Uh-huh.

Q.   -- where you said you didn't have any trouble getting aggressive with people and letting them know that they should buy the additional subscriptions –

A.   Uh-huh.

Q.   -- and they said, No thank you.

A.   Uh-huh.

Q.   And I said, what was the next step?

A.   So if -- if it was five subscriptions, I probably wouldn't do anything; because to your earlier point, the cost benefit of chasing down an additional four subscriptions for me, I'd probably move on.

     If it was a hundred, then I would not let that go.

Q.   And that's because of your bonus?

A.   Yeah.  And I might as well spend more of my time trying to chase down either new business or a larger deal.

Q.   So safe to say you were more diligent with larger customers than smaller customers?

A.   Yes.

-10-

. . .

Q.    Is this single user the kind of account that you
      said you wouldn't press very hard because it wasn't
      worth it from a commission standpoint?

A.    Yes.[13]

Kayne argues that these exchanges prove that EIG did not exercise

reasonable diligence to discover the alleged infringement.[14]

"Generally, the reasonableness of plaintiffs' actions, including

the reasonableness of inquiring or failing to inquire, is a fact

question for the jury." Dodson v. Hillcrest Securities Corp., 1996

WL 459770, at *8 (5th Cir. 1996) (citing Corwin v. Marney, Orton

Investments, 843 F.2d 194, 198 (5th Cir. 1988) (discussing federal

discovery rule)).   The hypothetical scenario presented to Buttrick

does not resolve the factual question of whether he exercised

reasonable diligence in his investigation of Kayne's suspected

infringement.    There is no dispute that Buttrick initiated a

dialogue with Lerma about potential infringement, only as to the

content of the exchange and what happened afterwards.

Assuming arguendo that the deposition testimony showed that

EIG was less diligent when investigating smaller infringement

cases, summary judgment would still not be appropriate. Objective,

not relative, reasonableness is the standard.   The evidence before

---

[13]Buttrick Deposition Transcript, Exhibit K to Defendants'
Brief in Support of Their Motion for Partial Summary Judgment
("Defendants' Brief"), Docket Entry No. 103-12, pp. 40:15-41:18,
74:10-13.

[14]Defendants' Brief, Docket Entry No. 103, pp. 18-19.

the court would permit a reasonable fact-finder to infer that Buttrick exercised due diligence in light of the facts known to him at the time, and the court must draw such inferences in favor of the non-movant.[15]  Summary judgment will be denied on this issue.

## IV.  <u>Plaintiffs' Motion for Summary Judgment</u>

EIG moves for summary judgment on several of Kayne's affirmative defenses.[16]  For the reasons stated below, summary judgment will be granted as to all defenses except for failure to mitigate.

## A.  Equitable Estoppel

Kayne asserts the affirmative defense of equitable estoppel. EIG argues that Kayne has shown no sufficient evidence on any of the elements of equitable estoppel.  Kayne responds that Buttrick's admonition to Lerma that other subscribers had been required to pay for retroactive subscriptions as a result of infringement estops EIG from claiming any additional damages.

---

[15]The parties also dispute whether EIG had the right to audit Kayne and whether Kayne fraudulently concealed their infringement. Because the fact issues identified above are sufficient to preclude summary judgment, the court will not address these arguments.

[16]A threshold issue in this case is what body of law should govern equitable defenses.  <u>See generally</u> John T. Cross, The Erie Doctrine in Equity, 60 La. L. Rev. 173 (1999).  EIG cites to Texas law.  Kayne has not argued for the application of any other law. The court will apply Texas law at this stage absent any objection or substantive briefing by the parties.  <u>See</u> <u>Sprint Solutions, Inc.</u> <u>v. Precise Wireless International Inc.</u>, Civil Action No. H-15-0032, 2015 WL 2359519, at *3 (S.D. Tex. May 15, 2015).

In order to establish the defense of equitable estoppel, a copyright defendant must prove that:  (1) the plaintiff knew the facts of the defendant's infringing conduct; (2) the plaintiff intended that its conduct be acted on or so acted that the defendant had a right to believe that it was so intended; (3) the defendant was ignorant of the true facts; and (4) the defendant relied on the plaintiff's conduct to its injury.  <u>Carson v. Dynegy, Inc.</u>, 344 F.3d 446, 453 (5th Cir. 2003) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.07 (2002) and collecting cases applying this four-part test).  Analysis "focuses on what the defendant has been led to reasonably believe from the plaintiff's conduct."  <u>A.C. Aukerman Co. v. R.L. Chaides Construction Co.</u>, 960 F.2d 1020, 1034 (Fed. Cir. 1992).  Estoppel in the analogous patent context requires that the patentee communicate "that the accused infringer will not be disturbed by the plaintiff patentee in the activities in which the former is currently engaged."  <u>Id.</u> at 1042.  Because it typically bars suit entirely, estoppel is "a drastic remedy and must be utilized sparingly."  <u>Keane Dealer Services, Inc. v. Harts</u>, 968 F. Supp. 944, 948 (S.D.N.Y. 1997).

Kayne argues that EIG's warning about what had happened to other infringing subscribers indicates that EIG knew of Kayne's alleged infringement.  Kayne then alleges that EIG intended for Kayne to act in response to the warning by purchasing additional subscriptions.  Kayne alleges that it was ignorant of the fact that

EIG intended to pursue relief beyond retroactive subscription fees. Finally, Kayne allegedly relied upon EIG's representation to continue in its course of conduct to its detriment.

In sum, Kayne argues that it continued infringing because EIG led them to believe that it would not pursue damages beyond retroactive subscription fees for prior infringement. Kayne would have the court hold that Buttrick's passing reference to one way of resolving infringement is sufficient to show that EIG effectively abandoned its right to statutory damages or other relief. Kayne cites no cases holding that such conduct would support the drastic remedy of equitable estoppel. Moreover, even assuming that Buttrick's warning was misleading, Kayne offers no evidence that it acted in reliance on the warning, reasonably or otherwise. Summary judgment will be granted as to this defense.

## B.   Implied License

Kayne asserts the affirmative defense of implied license. Although an exclusive license must be in writing, an implied, nonexclusive license may arise "'[w]hen the totality of the parties' conduct indicates an intent to grant such permission.'" Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc., 128 F.3d 872, 879 (5th Cir. 1997) (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[A] (1997), at 10-41 (footnotes omitted)). EIG argues that Kayne has offered no evidence showing that EIG intended to grant an implied license. EIG further argues

-14-

that the existence of an express contract precludes the formation of an implied contract.

Kayne argues that the existence of an implied license agreement "is not in dispute,"[17] citing the following deposition testimony from Wallin:

> Q:   Paragraph 18 of the declaration, you reference "EIG's long-standing policy that access by assistants for the purpose of sending a publication to their supervisor is not an unauthorized use, provided that their supervisor is a subscriber."
>
> Can you tell me where that policy is recorded?
>
> A:   I don't believe it is recorded.
>
> Q:   So would you say that it's an unwritten policy then?
>
> A:   Yes.  I would say it's an unwritten policy, because I don't know that it's recorded.
>
> Q:   And how is that policy communicated to your subscribers?
>
> A:   I don't think it's communicated to the subscribers, per se.
>
> . . .
>
> Q:   Continuing to read that sentence, it says, "Except as otherwise noted in Section 1(c), no content from EIG services may be downloaded, transmitted, broadcast, transferred, assigned, reproduced, or in any other way used or disseminated in any form to any person not specifically identified herein as an" -- excuse me, "as an authorized user without the explicit written consent of Energy Intelligence in each instance."
>
> Did I read that correctly?

---

[17]Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defenses, Docket Entry No. 118, p. 15.

A:   I think you did.

Q:   Is that a -- to you, is that a fairly clear statement of -- the authority granted to your subscribers?

A:   I think that's correct.

Q:   But that's not a true statement, correct?

A:   In what sense?

Q:   Well, earlier you testified about an unwritten policy that allows someone, other than the authorized user, to both download and do other things with the publication.

A:   Yeah.  That would be someone who's acting as an agent, assistant, or whatever to the authorized user.

Q:   And where does it say that in this agreement that an authorized agent can take -

A:   I don't think it says it. It doesn't say it.

Q:   So but this agreement says that nobody can do those things without explicit written consent -

A:   Right.

.  .  .

Q:   How is a subscriber supposed to know when it is authorized versus when it's unauthorized to take these actions regarding Oil Daily?

A:   I think this agreement is -- stipulates what's authorized and what's not authorized.

Q:   But it's in contradiction to the unwritten informal agreement -

A:   Yeah.

Q:   -- that allows certain people that are not authorized users to download and use the Oil Daily?

-16-

A:   Right, right.[18]

Wallin's testimony merely articulates the common-sense reality of ordinary business practices.  Assistants are often employed for such routine tasks as retrieving subscriptions.   If Baker's assistant logged in to EIG's website using his credentials for the sole purpose of retrieving his subscription for his use under the terms of the subscription license, no reasonable juror could find that activity infringing, and therefore no license was necessary.

Assuming arguendo that the policy could give rise to a nonexclusive license, there is no indication that Kayne's conduct was based upon the supposed existence of such an implied license or that EIG's policy was communicated to Kayne in any way.   "[A] nonexclusive implied license need not be evidenced by a writing" and instead "may be implied from conduct or granted orally." Dynegy, 344 F.3d at 451 n.5 (citing Lulirama, 128 F.3d at 879). But there must be some conduct or expression from which a license could be implied.   Because Kayne offers no evidence of such conduct, the defense fails as a matter of law.   Summary judgment will be granted as to this defense.

## C.   Failure to Mitigate

Kayne asserts EIG's failure to mitigate damages as an affirmative defense.   The failure to mitigate is an affirmative

---

[18]Wallin Deposition Transcript, Exhibit G to Defendants' Response, Docket Entry No. 118-8, pp. 71:18-72:8, 88:13, 89:23, 91:1-13.

defense to infringement.  See Interplan Architects, Inc. v. C.L. Thomas, Inc., Civil Action No. 4:08-3181, 2010 WL 4366990, at *47-*48 (S.D. Tex. Oct. 27, 2010) (collecting cases).  EIG argues that Kayne offers "no evidence as to when [EIG] should have 'mitigated' damages, what actions should have been taken, how such actions might have mitigated damages or the amount by which [EIG's] damages would have been mitigated."[19]

Although Kayne has not proven that EIG knew of the alleged infringement as a matter of law for limitations purposes, Kayne faces a significantly lessened burden as a non-movant under the summary judgment standard.  The court must draw all reasonable inferences in Kayne's favor as the non-movant.  Because a reasonable fact-finder could infer EIG's actual or constructive knowledge from the available evidence and that the subsequent alleged infringement could have been avoided, Kayne's mitigation defense survives summary judgment.

D.   Unclean Hands/"Entrapment"

Kayne asserts the defense of "unclean hands" and or "entrapment," arguing that "[EIG], by design, set a trap for Kayne in an attempt to augment their purported damages."[20]  "[S]uch a defense is recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the

---

[19]Plaintiffs' MPSJ, Docket Entry No. 105, p. 23.

[20]Defendants' Response, Docket Entry No. 118, p. 18.

subject matter of the infringement action." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.09[B] (Matthew Bender, Rev. Ed.). "The maxim of unclean hands is not applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties," but rather where plaintiff's wrongful acts "in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." Mitchell Bros. Film Group v. Cinema Adult Theater, 604 F.2d 852, 863 (5th Cir. 1979) (internal quotation marks omitted) (quoting Keystone Driller Co. v. General Excavator Co., 54 S. Ct. 146, 148 (1933).

Kayne does not argue that its infringement was innocent or that it was enticed into infringing. Instead, it argues that EIG strategically delayed litigation in order to augment damages.[21] Kayne cites no examples, and the court can find none, of strategic delay providing the basis for an unclean hands defense. Whatever increased damages may result from EIG's alleged litigation strategy are adequately addressed by other defenses, including the statute of limitations and failure to mitigate. The court sees neither need nor basis in the law to limit EIG's damages in this case on the basis of unclean hands. Summary judgment will be granted for EIG as to this defense.

**E. Comparative Fault**

Kayne argues that "[a]ny injury suffered by [EIG] was a result of [EIG's] own conduct and/or failure to comply with the terms of

---

[21]Id. at 18-19.

any relevant and applicable contract(s) or law(s)."[22] Kayne offers no factual basis for this defense, and does not respond to EIG's arguments. EIG characterizes the defense as a "comparative responsibility" or "comparative fault" defense.[23] Absent any contrary characterization by Kayne, the court concurs. But that defense is not applicable to copyright infringement claims. Interplan, 2010 WL 4366990, at *48. Moreover, however the defense is characterized, summary judgment will be granted for EIG because there is no summary judgment evidence before the court to raise a genuine issue of material fact as to this defense.

## V.   Plaintiffs' Motion for A Protective Order

EIG moves for a protective order in response to Kayne's Rule 30(b)(6) deposition notice. EIG objects to several of Kayne's proposed topics.

## A.   Topic No. 1

Kayne seeks testimony relating to the details of settlement agreements from prior litigation ("Topic No. 1"). EIG asks the court to strike the topic as irrelevant and not proportional to the needs of the case.[24] District courts routinely exclude settlement

---

[22]Defendants' Answer to Second Amended Complaint, Docket Entry No. 91, p. 10 ¶ 2.

[23]Plaintiffs' MPSJ, Docket Entry No. 105, p. 27.

[24]Plaintiffs' Motion for a Protective Order, Docket Entry No. 129, pp. 8-9.

-20-

licenses when their probative value is substantially outweighed by the dangers of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Civ. P. 403; see Fenner Investments, Ltd. v. Hewlett-Packard Co., Civil Action No. 6:08-273, 2010 WL 1727916, at *2 (E.D. Tex. April 28, 2010) (collecting cases). Courts have, however, relied on settlement licenses when they provide the most reliable licenses available. ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 872 (Fed. Cir. 2010) (observing that a settlement license was the most reliable on the record while acknowledging the distorting effect of litigation).

Kayne argues that testimony on Topic No. 1 is needed to calculate damages on the basis of a hypothetical license fee.[25] The court sees no such need given the availability of actual license fees from previous dealings between the parties and comparable licenses that did not arise from litigation.[26]  As EIG notes, license fees arising in settlement are the result of a compromise between parties faced with, or in the midst of, costly litigation.[27]

---

[25]Defendants' Response to Plaintiffs' Motion for a Protective Order ("Defendants' Response-Protective Order"), Docket Entry No. 131, pp. 4-9.

[26]"Moreover, [EIG has] produced a substantial amount of information concerning [EIG's] licensing practices during the period of alleged infringement, including pricing, discounts and all licensing options for [Oil Daily]. (see, e.g., Abbott Decl., Ex. C - H.)"  Plaintiffs' Reply in Support of Their Motion for a Protective Order ("Plaintiffs' Reply in Support"), Docket Entry No. 134, p. 9.

[27]Id. at 10-11.

Courts have recognized the limited value of such agreements when determining what fee the parties would have negotiated in the ordinary course of business and only resort to such evidence when settlements provide the most reliable licenses.  See, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 77 (Fed. Cir. 2012) ("license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty").  EIG has published subscription fees and has negotiated licenses and discounts from which Kayne can calculate a hypothetical license fee for its proposed damages model.  Because the court concludes that the prior settlements are not the most reliable licenses available in this case and that any probative value therein is substantially outweighed by the balancing concerns identified in Rule 403, the court will grant EIG's motion as to Topic No. 1.  Kayne will not be permitted to seek evidence on the details of prior settlements arising out of litigation including the publications infringed and the duration of infringement.

**B.   Topic No. 12**

Kayne seeks testimony on "[EIG's] decisions to take action, or not take action, in response to any suspected infringers of its publications."[28]  EIG objects to this topic but concedes that "if questions remain about [EIG's] actual policies and practices regarding copyright enforcement, and the court limits Topic No. 12

---

[28]Notice cited in Plaintiffs' Motion for a Protective Order, Docket Entry No. 129, p. 11.

to that subject, [EIG] will designate a corporate witness to testify as to [EIG's] actual policies and practices for enforcing [its] copyrights."[29] EIG's concession is reasonable. Because the court recognizes that testimony on this topic may be relevant to Kayne's mitigation defense, Kayne may inquire into EIG's actual policies and practices for enforcing their copyrights. But the court will not extend the current deadlines to allow for additional depositions or further discovery. The court intends to set a trial date as soon as possible after docket call, which is set for April 14, 2017. The parties are advised to prioritize their schedules in late April and May accordingly.

## C.   Topic Nos. 14 & 15

Kayne seeks testimony regarding "[t]he compensation of Mr. Mark Wellman and Mr. John Hitchcock and any other personnel that are involved in enforcing [EIG's] copyrights" (Topic No. 14) and "[d]etails regarding the expenses [EIG] incur[s] to run its business including without limitation employee and executive and owner compensation" (Topic No. 15). Kayne states that the parties have come to agreement on these topics.[30] But EIG denies reaching an agreement.[31] Kayne's evidence of "agreement" consists of emails

---

[29]Plaintiffs' Reply in Support, Docket Entry No. 134, p. 14.

[30]Defendants' Response-Protective Order, Docket Entry No. 131, p. 3.

[31]Plaintiffs' Reply in Support, Docket Entry No. 134, p. 15 & n.8.

from EIG acknowledging Kayne's offer to "limit the scope of their examination" on these topics to questions on documents that have already been produced and EIG's request for Kayne to identify the documents by Bates number.[32] EIG alleges that Kayne never followed through by amending its Notice of Deposition or identifying the documents.[33] Because these topics as presented are neither relevant nor proportional to the needs of the case, Kayne will not be permitted to inquire into them.

**D.    Topic No. 17**

Kayne seeks testimony as to "[t]he amount of statutory damages [EIG] demand[s] for all alleged infringements in this case, and if [EIG] refuse[s] to make a specific demand then an amount that [EIG] believe[s] is a fair amount and the facts to support any amount or demand."[34]   The court agrees with EIG that this amounts to an impermissible request for a settlement demand.   Kayne will not be permitted to seek testimony on this topic.

## VI.  Conclusions and Order

For the reasons discussed above, the court concludes that each issue of Oil Daily constitutes a single work and that annual

---

[32]Emails from Stephen Ankrom, Exhibits A & B to Docket Entry No. 131.

[33]Plaintiffs' Reply in Support, Docket Entry No. 134, p. 15 n.8.

[34]Rule 30(b)(6) notice cited in Plaintiffs' Motion for a Protective Order, Docket Entry No. 129, p. 14.

subscriptions to a newsletter are not compilations under copyright law. The court further concludes that genuine issues of material fact remain as to when the statute of limitations accrued for EIG's copyright infringement claims arising more than three years before EIG filed this action. Accordingly, Defendants' Motion for Partial Summary Judgment (Docket Entry No. 101) is **DENIED**.

The court concludes that summary judgment is warranted on the defenses of equitable estoppel, implied license, unclean hands, and comparative fault. Because the factual question of when EIG knew of the alleged infringement is unresolved, genuine issues of material fact remain as to whether EIG failed to mitigate its damages. Accordingly, Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defenses (Docket Entry No. 105) is **GRANTED in part** and **DENIED in part**.

Plaintiffs' Motion for a Protective Order (Docket Entry No. 129) is **GRANTED in part** and **DENIED in part** subject to the limitations stated above.

**SIGNED** at Houston, Texas, on this 24th day of January, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE