United States District Court
Southern District of Texas
**ENTERED**
July 26, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENERGY INTELLIGENCE GROUP, INC. | § | |
| and ENERGY INTELLIGENCE GROUP | § | |
| (UK) LIMITED, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1903 |
| | § | |
| KAYNE ANDERSON CAPITAL | § | |
| ADVISORS, LP and KA FUND | § | |
| ADVISORS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited (together, "Plaintiffs" or "EIG") have sued Kayne Anderson Capital Advisors, LP and KA Fund Advisors, LLC (together, "Defendants" or "Kayne") for copyright infringement. Pending before the court are Defendants' Motion for Referral to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b) and a Concurrent Stay ("Motion for Referral") (Docket Entry No. 204) and Plaintiffs' Motion to Strike the Expert Declaration of Ralph Oman ("Motion to Strike") (Docket Entry No. 236). For the reasons stated below, Kayne's Motion for Referral will be denied and EIG's Motion to Strike will be granted.

## I. __Background__

A detailed history of the parties' business relationship as it relates to the present litigation is provided in a prior opinion.[1] In short, EIG alleges that Kayne copied and distributed Oil Daily, a subscription newsletter published by EIG, in violation of EIG's subscription agreements.[2]   From at least 2004 to 2013 Kayne purchased a single annual subscription to Oil Daily for a Kayne employee, Jim Baker.  That subscription was routinely forwarded to Kayne employees and others who were not subscribers.  In 2013 Kayne entered into a multi-user license agreement with EIG, paying for five Kayne employees to receive Oil Daily.  But EIG alleges that Kayne continued to distribute unauthorized copies of Oil Daily until at least May 21, 2014.  EIG filed this action against Kayne for copyright infringement on July 8, 2014.

Docket call was held on April 14, 2017, and a trial date was then set.  On May 3, 2017, with trial set to begin the following month, Kayne challenged the validity of EIG's copyright registrations for the first time and moved for referral to the Register of Copyrights and for a stay of proceedings.  Despite Kayne's tardiness, the court postponed trial in order to consider

---

[1]Memorandum Opinion and Order, Docket Entry No. 68.

[2]Factual allegations are taken from Plaintiffs' Second Amended Complaint for Copyright Infringement, Contributory Copyright Infringement, Vicarious Copyright Infringement, and Violation of the Integrity of Copyright Management Information, Docket Entry No. 38.

the motion and ordered EIG to respond.  In Defendants' Reply in
Support of Their Motion for Referral to the Register of Copyrights
Pursuant to 17 U.S.C. § 411(b) and a Concurrent Stay ("Reply")
(Docket Entry No. 232), Kayne introduced a declaration from a
previously undisclosed expert in support of its Motion for Referral.
EIG moves to strike Kayne's expert's declaration as untimely.

## II.  EIG's Motion to Strike

Because Kayne's Reply incorporates the Declaration of Ralph
Oman ("Oman Declaration") (Docket Entry No. 232-1), the court will
address the admissibility of the Declaration before turning to the
merits of Kayne's arguments in favor of its Motion for Referral.
EIG moves to strike the Declaration as an untimely expert report.
EIG bases its arguments primarily on Federal Rule of Civil
Procedure 26(a)(2) regarding the mandatory disclosure of expert
witnesses a party "may use at trial."  Kayne argues that Oman is
not subject to Rule 26 because his Declaration is only for the
benefit of the court, and his testimony will not be used at trial.
Kayne also argues that Oman's expert opinion is necessary to rebut
arguments made in Plaintiffs' Opposition to Defendants' Motion for
Referral to the Register of Copyrights Pursuant to 17 U.S.C.
§ 411(b) and a Concurrent Stay ("Opposition") (Docket Entry
No. 229).  Kayne's arguments are unavailing, and Kayne's untimely
designation of an expert in its Reply to a late motion will not be
permitted.

-3-

The court has broad discretion in scheduling and managing its docket. <u>McClain v. Lufkin Industries, Inc.</u>, 519 F.3d 264, 282 (5th Cir. 2008). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The most recent scheduling order regarding experts in this case called for identification of the parties' experts and production of their reports by August 5, 2016, and identification of the parties' rebuttal experts and production of their reports by September 9, 2016.[3]  Kayne's designation of an expert for the first time in a reply filed on June 9, 2017, is untimely.

Kayne has known about the issues raised in its Motion for Referral for years.[4]  Kayne subscribed to <u>Oil Daily</u> for over a decade, and EIG attached its registration certificates to its original complaint in 2014.  Kayne had everything it needed to investigate and identify any defects in EIG's registrations from the inception of this action.  But Kayne only now challenges the validity of EIG's copyright registrations.  In doing so, Kayne has delayed an already overdue trial.  The court initially agreed to consider the Motion for Referral out of an abundance of caution. But Kayne now asks the court to rely on the legal analysis of an expert first identified in its Reply.

---

[3]Order, Docket Entry No. 81, p. 2.

[4]Kayne's failure to discover the alleged deficiencies until April of 2017 is not an excuse.  Kayne has offered no explanation for its failure to investigate this issue during discovery.

Kayne's explanation for the delayed disclosure of its expert is that Oman's testimony only became necessary as a result of EIG's "unsupported arguments" in its Opposition.   Kayne argues that Oman's testimony is needed to rebut EIG's arguments concerning the materiality of any registration inaccuracies and the purpose and implementation of group copyright registrations.   Kayne's argument is not persuasive.[5]   EIG did not rely on expert testimony in its Opposition; but if Oman's Declaration is admitted, EIG will be entitled to a rebuttal expert, which will further delay the resolution of this matter at additional expense to the parties.

Kayne argues that its delay is harmless because the focus of the Rule 26 prejudice inquiry is on whether failure to timely disclose its expert prejudiced EIG's ability to prepare for trial, not on whether EIG will be prejudiced by use of the evidence at trial.   See Savant v. APM Terminals, Civil Action No. 4:11-1980, 2013 WL 12099874, at *7 (S.D. Tex. Aug. 27, 2013).   But admitting Oman's testimony will prejudice EIG's ability to prepare for trial. On the eve of trial Kayne has already diverted EIG's attention and resources by raising new issues and would further do so by

---

[5]Notwithstanding Kayne's argument that Rule 26(a)(2) does not apply, the court considers the factors applied by the Fifth Circuit in such cases a helpful aid in deciding whether to strike the Oman Declaration.   See Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 883 (5th Cir. 2004) (considering four factors when reviewing a trial court's exercise of discretion to exclude experts not properly designated:   "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice").

-5-

designating a new expert.  EIG would be prejudiced whether or not it were given the opportunity to rebut Oman's testimony.

Neither Kayne's explanation for its delay nor its argument that Oman's testimony is necessary is persuasive.  The court further concludes that admitting the Oman Declaration would prejudice EIG by interfering with its trial preparation, adding to its expenses, and delaying its day in court.[6]  These effects could not be cured by a continuance.  The court will therefore conduct its analysis without the benefit of Oman's testimony.  The Declaration and any reference to it in Kayne's Reply will be disregarded.

### III.  Kayne's Motion for Referral

Kayne alleges that EIG knowingly included inaccurate information in all of its registration applications for the works at issue in this case.  Kayne's arguments can be summarized as follows:  (1) Oil Daily was not eligible for group registration using Form G/DN because EIG did not either author or possess

---

[6]In anticipation of Kayne's objection to the striking of the Oman Declaration, the court notes that Kayne offers the Declaration "not to assist the trier of fact at trial, but to aid the Court's purely legal analysis." Defendants' Response to Plaintiffs' Motion to Strike Declaration, Docket Entry No. 238, p. 1.  Because the court is capable of conducting its legal analysis and drawing its conclusions about the practices of the Copyright Office using materials previously available to both parties (e.g., undisputed facts in the record, case law, learned treatises, and published guidance from the Copyright Office), Kayne will not be prejudiced by the exclusion of the Oman Declaration.  The court does not rely on any "unsupported arguments" in EIG's Opposition.

exclusive rights to all of the content contained in the registered issues; or (2) if <u>Oil Daily</u> did qualify for group registration, EIG provided inaccurate information by failing to identify the <u>Oil Daily</u> issues as "compilations."

A.   **Standard of Review**

Section 411(b)(1) states:

> A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—
>
> > (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> >
> > (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

Section 411(b)(2) requires that "[i]n any case in which inaccurate information . . . is alleged, the court <u>shall</u> request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration" (emphasis added).

The Seventh Circuit, recognizing the statute's "obvious potential for abuse," has strongly cautioned both courts and litigants to "be wary of using this device in the future." <u>DeliverMed Holdings, LLC v. Schaltenbrand</u>, 734 F.3d 616, 625 (7th Cir. 2013). Courts may therefore require litigants to "demonstrate that (1) the registration application included inaccurate

information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office" before requesting review. <u>Id.</u> (noting that the Register of Copyrights had endorsed such an approach).

## B.   Form G/DN

Form G/DN may be used for the group registration of daily newspapers and newsletters. In order for a newsletter to qualify for group registration it must meet the conditions prescribed by 37 C.F.R. § 202.3(b)(9). Kayne argues that <u>Oil Daily</u> does not meet two of those conditions: (1) that "[t]he works must be essentially all new collective works or all new issues that have not been published before" and (2) that "[e]ach issue must be a work made for hire." 37 C.F.R. § 202.3(b)(9)(ii),(iii).

Kayne alleges that the issues of <u>Oil Daily</u> EIG submitted for group registration contain articles authored by Singaporean and Russian authors and republished Reuters articles for which EIG did not have exclusive rights. Kayne argues that the content in question could not have been work made for hire due to foreign copyright laws and that the issues were not all new because they contained preexisting content. EIG responds that Kayne's focus on the individual contributions within each issue instead of the issue as a whole is misguided. EIG contends that each "work" being registered is an entire issue of <u>Oil Daily</u> and that each issue is an essentially all new work made for hire. The court agrees.

-8-

Kayne's arguments fatally misapply the term "work" to the contributions within each issue rather than the issues themselves.

The instructions contained in the registration application forms resolve the argument as to what "work" was being registered. Form G/DN defines a newsletter as a "serial." (Docket Entry No. 204-22, p. 1)  Form SE defines a serial as "a work issued or intended to be issued in successive parts bearing numerical or chronological designations and intended to be continued indefinitely." (Docket Entry No. 204-23, p. 1)  The form also instructs registrants not to use it to register "an individual contribution to a serial." Id.  Form SE states the following regarding authorship:  "In the case of a serial issue, the organization that directs the creation of the serial issue <u>as a whole</u> is generally considered the author of the 'collective work' . . . whether it employs a staff or uses the efforts of volunteers." Id. (emphasis added).  Form G/DN defines a "collective work" as "a work, such as a periodical issue, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." (Docket Entry No. 204-22, p. 1)  Form SE states that "[t]he term 'collective work' means that the author is responsible for compilation and editorial revision and <u>may</u> also be responsible for certain individual contributions to the serial issue." (Docket Entry No. 204-23, p. 2)  (Emphasis added.)

When read together, the language cited above support EIG's use of Form G/DN to register issues of <u>Oil Daily</u> as long as EIG directed the creation of each issue as a collective whole. The independent authorship of, or nonexclusive rights to, component parts such as articles or editorial content does not preclude the use of serial or group registration. Kayne's argument that in order to use Form G/DN a registrant must have authored <u>all</u> of the content of a newspaper or newsletter conflicts with the relevant statute:

> The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

17 U.S.C.A. § 103(b). As one treatise puts it:

> Pursuant to this section, ownership of the collective work does not, by itself, result in any ownership in the individual contributions. Accordingly, registration of the collective work does not imply that the individual contributions are covered by the collective work registration.

5 Patry on Copyright § 17:91. Nor does the inclusion of preexisting material affect whether or not a particular issue is essentially all new, since it is the novelty of the collective work as a whole that matters.

Having concluded that the "work" being registered is each complete issue of <u>Oil Daily</u>, the court turns to the question of whether each issue of <u>Oil Daily</u> was a work made for hire. The

definition of a "work made for hire" is "a work prepared by an employee within the scope of his or her employment." Form G/DN (Docket Entry No. 204-22, p. 1). Kayne does not dispute that EIG directed, controlled, and supervised the creation of each issue <u>as a whole</u> or that an EIG employee ultimately prepared each issue.[7] Each issue of <u>Oil Daily</u>, in its entirety, therefore qualifies as a work made for hire.

The court finds no authority supporting Kayne's positions that Form G/DN cannot be used to register works containing independently authored contributions or that the contributions of EIG's employees working abroad render the issues ineligible for group registration. The court therefore concludes that EIG was authorized to use Form G/DN to register <u>Oil Daily</u> issues and that it provided accurate information in its registration applications by doing so.

## C.   "Compilation"

In its Reply Kayne effectively concedes that EIG was permitted to utilize group registration for <u>Oil Daily</u>, stating that "EIG could have used Form G/DN <u>if</u> it claimed <u>only compilation</u> copyrights."[8] Kayne argues, however, that by checking the boxes

---

[7]The reasoning applied above to the distinct contributions contained within an issue is likewise applicable to the editorial content and contributions of EIG's Singaporean editor. The works in which EIG claimed authorship are the completed issues of <u>Oil Daily</u>. If EIG was ultimately responsible for the finished product, it is the author for registration purposes.

[8]Reply, Docket Entry No. 232, p. 5 (emphasis in original).

for "Text" and "Editing" under "Author's Contribution" on Form G/DN and failing to check the box marked "Compilation," EIG knowingly provided inaccurate information and attempted to assert a copyright for content that EIG did not author.  The court is not persuaded by this argument.

The Compendium of U.S. Copyright Office Practices, Third Edition, the administrative manual of the Register of Copyrights, offers guidance to claimants regarding the nature of authorship they may claim.[9]  It states that "[a]s a general rule, the U.S. Copyright Office may accept a claim in text or editing if the author contributed a sufficient amount of written expression to each issue."  U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1112.2 (3d ed. 2014) (providing instructions for completing Form G/DN).  It further states that "[t]he Office may accept a claim in compilation if there is a sufficient amount of creative expression in the selection, coordination, and/or arrangement of material that appears in each issue."  Id.

---

[9]Courts may consider the interpretations set forth in administrative manuals, policy statements, and similar materials "to the extent that those interpretations have 'the power to persuade.'"  Christensen v. Harris County, 120 S. Ct. 1655, 1663 (2000) (internal citations omitted).  Such materials "may constitute a 'body of experience and informed judgment' to which [courts] may resort for guidance."  Clackamas Gastroenterology Associates, P. C. v. Wells, 123 S. Ct. 1673, 1680 n.9 (2003) (citations omitted).  "The weight of [the agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . . ."  Skidmore v. Swift & Co., 65 S. Ct. 161, 164 (1944).

EIG contends, and Kayne does not dispute, that "the majority of the content contained in OD consists of previously unpublished articles created by reporters and editors employed by Plaintiffs."[10] The majority of EIG's contribution as the author of each issue is therefore not in selecting, coordinating, and/or arranging, but in text and editing.  The court concludes that EIG contributed a sufficient amount of written expression to each issue to support claims in the "Text" and "Editing" of each issue of Oil Daily.[11] The court is not persuaded that EIG's content selection showed sufficient creative expression to require, or even entitle, EIG to a claim in "Compilation."  Kayne has therefore not demonstrated that EIG provided inaccurate information by leaving the "Compilation" box unchecked on its registration.

**D.   Knowledge**

Assuming arguendo that EIG's registration applications contained inaccurate information, Kayne has not demonstrated that EIG knew of the inaccuracies.  EIG might reasonably have interpreted the Copyright Office's guidance in the same way that the court has.  Kayne relies on two facts to demonstrate EIG's

---

[10]Opposition, Docket Entry No. 229, p. 23.

[11]The Compendium notably uses the phrase "sufficient amount," which implies, contrary to Kayne's argument, that a claimant need not author the entirety of an issue in order to support claims for text and editing.

-13-

knowledge that its registration applications contained inaccurate information. Kayne points out that (1) although EIG asserted claims in "Compilation" from December 2004 through October 2007, it subsequently declined to do so and (2) the Copyright Office amended EIG's registration application for the January 2009 issues of <u>Oil Daily</u> to remove a claim for "graphical content" and to include a claim in "Compilation." Kayne asks the court to infer from those facts that EIG knew it was providing inaccurate information in subsequent registrations. That inference is unwarranted.

The change in EIG's applications subsequent to October of 2007 does not establish that EIG knowingly provided inaccurate information to the Copyright Office. A change in EIG's claimed contribution could instead indicate that EIG was correcting what it perceived to be an existing inaccuracy. The change in applications alone does not support an inference that EIG knowingly provided inaccurate information in subsequent applications. Nor does the amendment to the January 2009 issue of <u>Oil Daily</u> show that EIG knew its subsequent registration applications were inaccurate. Beginning with the first application submitted after the amendment was made following the April 29, 2009, conversation referenced in the amended application,[12] EIG no longer claimed authorship of "Pictorial and graphical content," which could reflect EIG's

---

[12]Certificate of Registration, Docket Entry No. 38-4, p. 14.

-14-

attempt to provide more accurate information.[13]   Again the
applications alone do not demonstrate knowledge.[14]   Kayne has
therefore failed to demonstrate that, assuming EIG provided
inaccurate information on its registration applications, EIG did so
knowingly.

## IV.  Conclusions and Order

For the reasons discussed above, the court concludes that
Kayne's designation of an expert in its Reply is untimely and
unnecessary.  Accordingly, Plaintiffs' Motion to Strike the Expert
Declaration of Ralph Oman (Docket Entry No. 236) is **GRANTED**.  The
court also concludes that Kayne has failed to demonstrate that EIG
knowingly provided inaccurate information to the Register of
Copyrights.  Accordingly, Defendants' Motion for Referral to the
Register of Copyrights Pursuant to 17 U.S.C. § 411(b) and a
Concurrent Stay (Docket Entry No. 204) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 26th day of July, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[13]Id. at 17.

[14]Although the court does not reach the issue of materiality,
the amendment shows that the Copyright Office did not refuse the
registration due to EIG's apparent mistake.

-15-